IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **ERNEST BASSKNIGHT and** | § | |
| **EMMA BASSKNIGHT,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **V.** | § | **No. 3:12-cv-1412-M (BF)** |
| | § | |
| **DEUTSCHE BANK NATIONAL TRUST** | § | |
| **COMPANY, as Trustee for the Holders of** | § | |
| **GSAMP 2002-HE2, Mortgage Pass Through** | § | |
| **Certificates, Series 2002-HE2,** | § | |
| **and OCWEN LOAN SERVICING, LLC,** | § | |
| | § | |
| **Defendants.** | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

The District Court referred this removed civil action challenging foreclosure proceedings to the U.S. Magistrate Judge for pretrial management. Defendants Deutsche Bank National Trust Company ("Deutsche Bank"), as Trustee for the Holders of GSAMP 2002-HE2 Mortgage Pass Through Certificates, Series 2002-HE2, and Ocwen Loan Servicing, LLC ("OLS") have filed a joint motion for summary judgment. For the following reasons, Defendants' motion should be granted.

### I.  Background

Plaintiffs Ernest Bassknight and Emma Bassknight purchased a home in Grand Prairie, Texas (the "Property") on or about September 28, 2001 using funds loaned to them by Fremont Investment & Loan ("Fremont"). Pl. Resp. App. at 1 & 6-17. In connection with that transaction, Plaintiffs executed a promissory note (the "Note") in favor of Fremont and a Deed of Trust (the

1

"Deed of Trust") securing payment of the Note.  *Id.* at 1, 6-17, 18-33; Def. MSJ App. at 2, ¶ 4.

Fremont subsequently assigned Plaintiffs' mortgage loan to Deutsche Bank.  Pl. Resp. App. at 1.

Plaintiffs encountered financial difficulties and, in early June 2011, they contacted their

mortgage servicer Litton Loan Servicing ("Litton") about a loan modification.  *Id.* at 2.  According

to Plaintiffs, Litton repeatedly assured them that it would not foreclosure during the loan

modification process.  *Id.*  On June 7, 2011, Litton sent Plaintiffs a letter stating that their loan would

be evaluated for eligibility in the Home Affordable Modification Program ("HAMP") and that no

foreclosure sale would be conducted during the HAMP evaluation period.  *See id.* at 2, 39-40.  The

next day, however, Litton notified Plaintiffs that they were not eligible for a loan modification

because the investor that held their mortgage did not participate in modifications.  *Id.* at 2, 37-38.

Litton offered to discuss other loan workout options with Plaintiffs, but also gave Plaintiffs formal

notice of their default and the noteholder's intent to accelerate the maturity date of the Note and

foreclose on the Property.  *See id.* at 37-38, 41-48; Def. MSJ App. at 73-74.

OLS became Plaintiffs' mortgage servicer in September 2011, and Plaintiffs continued to

discuss loan workout options with OLS.  Pl. Resp. App. at 2; Def. MSJ App. at 2, 67-71.  Plaintiffs

contend that they wanted to enter into an agreement for a short sale or a deed in lieu of foreclosure,

but OLS encouraged them to reapply for a loan modification.  Plf. Resp. App. at 3-4.  According to

Plaintiffs, OLS repeatedly assured them that they would qualify for a modification and that their

home would not be foreclosed during the modification review process.  *Id.*  On February 7, 2012,

OLS sent Plaintiffs a letter advising them that their application for a loan modification had been

denied.  *Id.* at 59.  Although the letter stated that Plaintiffs had thirty days to discuss alternative loss

mitigation options and that no foreclosure would be conducted during the 30-day period, OLS foreclosed on the Property the same day. *Id.*; Def. MSJ App. at 80-83, 87-89.

Plaintiffs filed the instant lawsuit challenging the foreclosure in the Dallas County Court of Law No. 5 on April 11, 2012. Defendants removed the case to federal court on the basis of diversity jurisdiction on May 7, 2012.[1] Thereafter, Defendants filed a motion to dismiss pursuant to Rule 12(b)(6), which the Court denied as moot after Plaintiffs filed an amended complaint in response. Defendants also filed a second motion to dismiss directed to Plaintiffs' amended complaint, which the Court converted to a motion for summary judgment. The parties sought, and were granted, various extensions of time and a stay of proceedings because they were actively exploring settlement, including a possible modification of Plaintiffs' mortgage. The parties eventually advised the Court that OLS had denied Plaintiffs' application for a loan modification, and Defendants filed the instant motion for summary judgment. After several additional extensions of time, the issues have been fully briefed, and the motion is now ripe for determination.

## II.  Legal Standards

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The substantive law determines which facts are material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue for trial. *See Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper.

---

[1] Diversity jurisdiction is proper because the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a)(1).

*See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *See Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). All evidence must be viewed in the light most favorable to the party opposing the motion. *See Rosado v. Deters*, 5 F.3d 119, 122-23 (5th Cir. 1993).

## III. Analysis

In their live complaint, Plaintiffs allege that Litton and OLS encouraged them to apply for a loan modification and continually reassured them that no foreclosure would occur. According to Plaintiffs, they complied with all of Defendants' requests for information, but Defendants deliberately delayed and misled them to the point of foreclosure. Defendants also allegedly assessed improper late charges, penalties, and other fees against Plaintiffs' mortgage loan account and wrongfully damaged their credit reputation. Plaintiffs further allege that they never received an opportunity to cure their default as required by the Texas Property Code and the Deed of Trust. Based on this conduct, Plaintiffs assert claims for breach of contract and anticipatory breach of contract, unreasonable debt collection efforts, violations of the Texas Debt Collections Practices Act ("TDCPA"), negligent misrepresentation, quiet title, and trespass to try title. Plaintiffs further seek injunctive relief prohibiting Defendants from evicting Plaintiffs from the Property, a declaratory judgment that Defendants' foreclosure of the Property was wrongful, actual damages, exemplary damages, an accounting of their mortgage loan, and attorneys' fees. By their motion, Defendants seek summary judgment as to all of Plaintiffs' claims and causes of action. The Court addresses each claim in turn.

### A. Preliminary Matters

In their summary judgment briefs, both parties raise a number of objections to evidence submitted by the other party. *See* Plf. MSJ Resp. at 8-9; Def. Reply at 4-5. Except for Plaintiffs' objections to Flora V. Rashtchy's declaration, which are addressed herein, none of the evidence challenged by the parties, even if considered by the Court, affects the disposition of this motion. Consequently, the objections are overruled as moot. *Winchester v. Nationwide Mut. Ins. Co.*, No. 3:09-CV-1225-M-BD, 2011 WL 913236, at *1 n.1 (N.D. Tex. Feb. 24, 2011), *rec. adopted*, 2011 WL 913245 (N.D. Tex. Mar. 15, 2011) (Lynn, J.) (overruling as moot objections to evidence that is not considered by the court in deciding motion for summary judgment).

### B. Breach of Contract and Anticipatory Breach of Contract

Plaintiffs' breach of contract claims are that (1) Defendants breached the Deed of Trust by failing to comply with notice requirements established by the Texas Property Code and (2) Defendants breached an alleged promise not to foreclose. Pl. First Am. Compl. at 7, ¶¶ 17-18. To the extent Plaintiffs assert claims for anticipatory breach of contract or breach of contract based on an alleged duty of good faith and fair dealing, *see id*. at 7, ¶ 18, they abandoned those claims by failing to address them in their summary judgment response. *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) (claim deemed abandoned when party failed to pursue it beyond initial pleading); *Martin v. Fed. Nat'l Mortg. Ass'n*, No. 3:12-CV-2768-M-BF, 2013 WL 4494523, at *4 (N.D. Tex. Aug. 22, 2013) (Lynn, J.) (same).

Even if Plaintiffs had not abandoned those claims, they would fail on the merits. First, Texas law does not recognize a common law duty of good faith and fair dealing in transactions between a mortgagee and mortgagor, absent a special relationship characterized by shared trust or an imbalance in bargaining power. *See, e.g., Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 329

(5th Cir. 2013).  Plaintiffs fail to identify any evidence that suggests a special relationship existed between Plaintiffs and Defendants that could give rise to a duty of good faith.  Also, any anticipatory breach of contract claim based on an alleged promise not to foreclose is subject to the statute of frauds.  *Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 239 (5th Cir. 2014).  As discussed below, Plaintiffs have failed to raise a genuine issue that their contract claims are not barred by the statute of frauds.

Nor can Plaintiffs avoid summary judgment on their breach of contract claims by arguing for the first time in their summary judgment response that their breach of contract claim is based on an alleged breach by Defendants of a "Deed in Lieu Agreement." *See* Pl. Resp. Br. at 10-12.  Plaintiffs never raised such a claim in their amended complaint.  To the contrary, their live pleading alleges that the parties never came to an agreement regarding a deed in lieu of foreclosure.  Pl. First Am. Compl. at 4-5, ¶¶ 10-12.  Accordingly, Plaintiffs' arguments regarding the breach of an alleged Deed in Lieu Agreement are not properly before the Court.  *Cutrera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court."); *May v. Ocwen Loan Servicing, LLC*, No. 4:12-CV-581, 2014 WL 2586614, at *4 (E.D. Tex. June 9, 2014) (same).  Moreover, a claim for breach of contract based on an alleged Deed in Lieu Agreement would fail on the merits because the summary judgment evidence does not raise a genuine dispute as to the existence of such an agreement. None of the documents Plaintiffs discuss in their summary judgment response can accurately be described as a valid Deed in Lieu Agreement.  *See* Pl. Resp. Br. at 10-11 (citing Pl. Resp. App. at 39-49, 59).[2]  The June 7, 2011 letter from Litton merely advises

---

[2]  Plaintiffs' response also cites to pages 116-117 and 125, but their appendix contains only 62 pages.

Plaintiffs that their loan is being evaluated for eligibility in the HAMP modification program.  *See id.* at 39-40.  The February 7, 2012 letter from OLS notifies Plaintiffs that they are not eligible for a HAMP modification.  *See id.* at 59.  Although both letters contain language stating that "no foreclosure sale will be conducted, and you will not lose your home," neither letter constitutes an agreement by Defendants to accept a voluntary conveyance of the Property from Plaintiffs and give up their right to foreclose under the Deed of Trust.  The remaining documents are simply a conglomeration of different proposals for alternative loan workout solutions from Litton and OLS.  *Id.* at 39-49.  Plaintiffs' mere assertion that they had an enforceable Deed in Lieu Agreement is insufficient to raise a genuine dispute as to the existence of a valid agreement.

### 1.  Claims Arising Out of Alleged Lack of Proper Notice

Plaintiffs allege that Defendants breached the Deed of Trust by failing to comply with certain statutory and contractual pre-foreclosure notice requirements, including those contained in the Texas Property Code § 51.002 and paragraphs 15, 16, 19, and 22 of the Deed of Trust.  *See* Pl. First Am. Compl. at 7, ¶ 17.  Defendants respond that they are entitled to summary judgment on Plaintiffs' claims arising out of any alleged lack of notice because the evidence establishes that they properly sent notices of default and the opportunity to cure, acceleration, and foreclosure, as required by Texas law and pursuant to the Deed of Trust.  Def. MSJ Br. at 4-6.

The Deed of Trust provides that the rights and obligations contained therein are subject to the requirements and limitations of Texas law.  Def. MSJ App. at 21, ¶ 16.  The Texas Property Code establishes specific requirements for a nonjudicial foreclosure.  *See* TEX. PROP. CODE §§ 51.002(a)-(e).  Among other things, Section 51.002 of the Texas Property Code requires that, prior to foreclosing on real property that is used as a debtor's residence, the mortgage servicer must

7

serve the debtor with (1) a notice of default and (2) a notice of sale. *Id.* § 51.002(b), (d); *Rodriguez v. Ocwen Loan Servicing, LLC*, 306 F. App'x 854, 855-56 (5th Cir. 2009) (per curiam). The mortgage servicer must serve the notice of default by certified mail and give the debtor at least twenty days to cure the default before sending the notice of sale. TEX. PROP. CODE § 51.002(d). The notice of sale, which also must be sent to the debtor by certified mail, must be given at least twenty-one days before the date of the scheduled foreclosure sale. *Id.*,§ 51.002(b)(3). "[S]ervice of a notice . . . by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address." TEX. PROP. CODE § 51.002(e). Further, "[t]he affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service." *Id.*, § 51.002(e).

Here, Defendants submit the declaration of Flora V. Rashtchy, a Contract Management Coordinator at OLS, who states, in pertinent part that (1) on July 19, 2011, Litton sent each Plaintiff a Notice of Default with Intent to Accelerate; and (2) on December 22, 2011, OLS through its attorney, Mackie Wolf Zientz & Mann, P.C., sent each Plaintiff a Notice of Acceleration of Loan Maturity and Notice of Foreclosure Sale. Def. App. at 4, ¶¶ 7-8. Ms. Rashtchy specifically avers that "[t]hese notices were sent by both regular and certified mail." *Id.* Plaintiffs object to Ms. Rashtchy's testimony that the July 19, 2011 Notices of Default and the December 22, 2011 Notices of Acceleration were sent to Plaintiffs on grounds that her testimony "lacks foundation, is hearsay, conclusory, and speculation." Pl. Resp. at 9. Plaintiffs contend that Ms. Rashtchy failed to establish how she obtained personal knowledge that the Notices were mailed. *Id.* They imply that Ms. Rashtchy must testify that she personally mailed the letters or that she has personal knowledge as to who mailed the letters. *Id.* They also suggest that her testimony must be corroborated by evidence

of mailing, such as evidence of the green cards indicating the letters were sent by certified mail.  *Id.* According to Ms. Rashtchy, her declaration is based on personal knowledge obtained from her review of OLS's records and documents pertaining to Plaintiffs' loan, including the July 19, 2011 "Notices of Default and Intent to Accelerate" and the December 22, 2011 "Notices of Acceleration of Loan Maturity" sent to Plaintiffs.  Def. App. at 3, ¶ 3; *see also id.*, Ex. A-5 & A-6.

Defendants' evidence is exactly the type of evidence repeatedly found by courts to be sufficient to constitute prima facie evidence that service by certified mail was completed in accordance with Texas law.  *See, e.g., Ayres v. Parker*, No. SA-12-CV-621-XR, 2013 WL 4048328, at *9 (W.D. Tex. July 29, 2013) (affidavit of bank officer specifically stating that bank sent notice of default "via certified mail" constitutes prima facie evidence that service by certified mail was completed); *Adebo v. Litton Loan Servicing, L.P.*, No. 01-07-00708-CV, 2008 WL 2209703, at *4 (Tex. App. -- Houston [1st Dist.] 2008, no. pet.) (defendant provided "prima facie evidence" referred to by § 51.002(e) through the affidavits of its vice-president and the foreclosure director of the foreclosing agency, both of whom averred compliance with the certified mail required to accomplish service); *Thornton v. Chase Manhattan Mortg. Corp.*, No. 12-01-00182-CV, 2002 WL 253914, at *2 (Tex. App. -- Tyler Feb. 20, 2002, no pet.) (affidavit by operations manager of law firm that was authorized agent for mortgagee sufficient to show that mortgagee sent notice of default pursuant to the requirement of section 51.002).  Contrary to Plaintiff's suggestion, there is no requirement that Ms. Raschtchy have personally participated in the process of sending the notices.  *Rodriguez v. U.S. Bank, N.A.*, No. SA-12-CV-345-XR, 2013 WL 5948002, at *2 (W.D. Tex. Nov. 5, 2013) (corporate representative can gain "personal knowledge" within meaning of § 51.002(e) by reviewing business records).  Nor is there any requirement that the affidavit be corroborated by independent evidence

of mailing.  *Hutchison v. Bank of Am., N.A.,* No. H-12-3422, 2013 WL 5657822, at *3 (S.D. Tex. Oct. 16, 2013) (affidavit of bank employee affirming that notice of sale was sent by certified mail was prima facie evidence of proper notice, notwithstanding failure of bank to submit certified mail return receipt issued with the notice of sale).  Plaintiffs' objections are overruled.

Ms. Rashtchy's affidavit thus constitutes prima facie evidence that Defendants served Plaintiffs with the required pre-foreclosure notices.  TEX. PROP. CODE § 51.002(e).  Plaintiffs fail to rebut Ms. Rashtchy's affidavit testimony with any competent summary judgment evidence.  Their bald allegation that they did not receive the required pre-foreclosure notices, *see* Pl. First Am. Compl. at 7, ¶ 17, fails to raise a genuine fact dispute for trial.  Nothing in Section 51.002(b) or (d) requires that the debtor actually receive the mandated notices.  *Warren v. Bank of Am., N.A.*, No. 3:13-CV-1135-M, 2013 WL 8177096, at *7 (N.D. Tex. Nov. 15, 2013) (The plaintiff's "allegation that he did not 'receive' the default or acceleration notices listed in § 51.002(d) could not plausibly entitle him to relief because the Property Code imposes no such requirement."); *Lambert v. First Nat'l Bank of Bowie*, 993 S.W.2d 833, 835 (Tex. App. -- Fort Worth 1999, pet. denied) ("There is no requirement that the debtor receive actual notice.").  Nor does the Deed of Trust require that Plaintiffs receive any notice of default, acceleration, right of reinstatement, or foreclosure.  *See* Def. MSJ App. at 27, ¶ 15 & 30, ¶ 22.

Plaintiffs' contentions that (1) Defendants' pre-foreclosure notices are invalid because the Notice of Default references the wrong Deed of Trust date or the Notice of Acceleration was issued only twenty-two days before the foreclosure sale and (2) Defendants withdrew the pre-foreclosure notices by breaching a HAMP trial payment plan agreement represent new theories that are not properly before the Court because Plaintiffs raised them for the first time in their summary judgment

response. *See United States v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 956 (S.D. Tex. 2007), *aff'd*, 2008 WL 3244000 (5th Cir. 2008) (party may not rely on new theory, raised only in response to motion for summary judgment, to defeat the motion); *Allstate Ins. Co. v. Plambeck*, No. 3:08-CV-0388-M-BD, 2012 WL 2130982, at *3 (N.D. Tex. Jan. 4, 2012), *rec. adopted*, 2012 WL 2130912 (N.D. Tex. June 12, 2012) (same).

Even if the Court were inclined to consider these arguments, they would fail. "[M]inor defects in an otherwise valid foreclosure sale do not void it." *Kourosh Hemyari v. Stephens*, 355 S.W.3d 623, 628 (2011) (per curiam). Such minor defects include the deed of trust's omission of a partnership designation, the notice of default stating the incorrect amount of principal and interest, or the notice of foreclosure sale failing to state a specific time on the date that the sale was to occur. *See, e.g., Brush v. Wells Fargo Bank, N.A.*, 911 F. Supp. 2d 445, 474 (S.D. Tex. 2012) (collecting cases). That the Notice of Default references an incorrect date for the Deed of Trust is a similar example of a minor defect that does not invalidate the notice. Plaintiffs' assertion that the Notice of Acceleration provides for only twenty-two days, rather than thirty days, notice of the foreclosure sale is not supported by the evidence. The Notice of Acceleration was sent on December 22, 2011, and the Property was foreclosed forty-seven days later on February 7, 2012. Def. MSJ App. at 4, ¶ 8. The evidence further fails to establish the existence of a valid HAMP trial payment plan agreement. *See* Pl. MSJ Resp. at 11 (citing Pl. Resp. App. at 39-49). A June 7, 2011 letter from Litton advising Plaintiffs that the loan servicer is evaluating their mortgage loan for eligibility for a HAMP modification states that Plaintiffs may enter into a trial payment plan only if they are eligible for a HAMP modification. Pl. Resp. App. at 39. A second letter from Litton dated the very next day unequivocally states that Plaintiffs are *not* eligible for a HAMP modification. *Id*. There is no

competent summary judgment evidence that Plaintiffs were offered, or entitled to, a trial payment plan.

Because Plaintiffs have failed to present any evidence to rebut Defendants' prima facie evidence or otherwise show that a fact question exists, Defendants are entitled to summary judgment on Plaintiffs' claims for breach of contract arising out of allegations that they did not receive the required pre-foreclosure notice. *Collins v. Bayview Loan Servicing, LLC*, 416 S.W.3d 682, 687-88 (Tex. App. -- Houston [14th Dist.] 2013, no pet.) (mortgagee entitled to summary judgment where mortgagor failed to rebut prima facie evidence that mortgagee gave proper notice of default); *Thornton*, 2002 WL 253914, at *2 (same).

## 2. Claims Arising Out of Alleged Promises Not to Foreclose

Plaintiffs next contend that Defendants breached an agreement not to foreclose while Plaintiffs' application for a loan modification was pending. *See* Pl. Resp. Br. at 12. Defendants argue that any breach of contract claim based on an alleged promise not to foreclose is barred by the statute of frauds.

In Texas, a lender's promise to delay foreclosure is subject to the statute of frauds and must be in writing to be enforceable. *See* Tex. Bus. & Comm. Code § 26.02(b), (b); *Milton v. U.S. Bank Nat'l Ass'n*, 508 F. App'x 326, 328-29 (5th Cir. 2013); *Johnson v. Wells Fargo Bank, N.A.*, No. 3:13-CV-1793-M, 2014 WL 717191, *5 (N.D. Tex. Feb. 24, 2014). To the extent Plaintiffs' breach of contract claims are based on alleged oral agreement that the foreclosure of their home would be delayed, *see* Pl. First Am Compl. at 3, ¶ 9; 5, ¶ 12; 7, ¶ 18; 8, ¶ 20; *see also* Pl. Resp. App. at 2-4, such claims are barred by the statute of frauds. *Milton*, 508 F. App'x at 329.

In their summary judgment response, Plaintiffs identify two writings which they apparently contend satisfy the statute of frauds and support their breach of contract claim. The first is a letter from Litton dated June 7, 2011, which was sent in response to Plaintiffs' initial request for a loan modification. The 2011 letter, states, in relevant part:

> We are currently evaluating your mortgage for eligibility in the Home Affordable Modification Program ("HAMP"), which would modify the terms of your loan and make your mortgage payments more affordable.
>
> Your loan has been referred to foreclosure, and Litton will continue the foreclosure process while we evaulate your loan for a HAMP modification. However, **no foreclosure sale will be conducted, and you will not lose your home** during the HAMP evaluation period.

Pl. Resp. App. at 39 (emphasis in original). The Court initially observes that there is no evidence that Litton's promise to delay foreclosure during the HAMP evaluation period is supported by any consideration. As a result, the Court questions whether the 2011 letter is an enforceable contract. *Smith Int'l, Inc. v. Egle Group LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (promise must be supported by consideration to be enforceable); *see also Bryant v. Bank of Am., N.A.,* No. 4:11-CV-448, 2012 WL 2681361, at *11 (E.D. Tex. 2012) (alleged promises to modify plaintiff's mortgage and forbear from foreclosure were illusory because bank neither required nor received any performance from Plaintiff in order to receive the benefit). Further, other uncontroverted summary judgment evidence establishes that the HAMP evaluation period undertaken by Litton ended on June 8, 2011. *Id.* at 37-38. The foreclosure sale did not occur until February 7, 2012. Thus, Defendants did not breach any promise to delay the foreclosure during Litton's evaluation of Plaintiffs' loan for a HAMP modification.

The second writing is a letter from OLS dated February 7, 2012, which similarly advises Plaintiffs that they are not eligible for a HAMP modification. *See id* at 59. This letter states:

> **You have 30 calendar days from the date of this notice to contact Ocwen to discuss the reason for non-approval for a HAMP modification or to discuss alternative loss mitigation options that may be available to you**. Your loan may be referred to foreclosure during this time, or any pending foreclosure action may continue. However, **no foreclosure sale will be conducted and you will not lose your home during this 30-day period**. Please note the foreclosure sale will not be suspended for this 30-day period if the court with jurisdiction over the foreclosure proceeding, or the bankruptcy court in a bankruptcy case, or the public official charged with carrying out the sale fails or refuses to halt the sale.

*Id.* (emphasis added). Here again, the Court questions whether the 2012 letter is an enforceable contract because there is no evidence that OLS's promise to delay the foreclosure sale is supported by any consideration. Additionally, Emma Bassknight admits that Plaintiffs did not receive the February 7, 2012 letter until after the foreclosure sale was completed. *See* Pl. Resp. App. at 4. To the extent the letter could constitute an "offer" by Defendants to delay foreclosure, Plaintiffs failed to accept it in time to create an enforceable agreement. *See, e.g., Sheehan v. Driskell*, 465 S.W.2d 402, 404 (Tex. Civ. App. -- Houston [14th Dist.] 1971, writ ref'd n.r.e.) (offeror may withdraw an offer at any time before it is accepted). In the absence of evidence establishing the existence of an enforceable agreement to delay foreclosure, Plaintiffs' breach of contract claims fail.

Plaintiffs also argue that the Defendants' repeated reassurances that no foreclosure would occur during the loan modification evaluation process give rise to a promissory estoppel exception to the statute of frauds. Pl. Resp. at 12-15. A claim for promissory estoppel may overcome the statute of frauds, but only if there is a promise to sign a written contract which had been prepared and which would itself satisfy the requirements of the statute of frauds. *Martins v. BAC Home Loans*

14

*Serv., L.P.*, 722 F.3d 249, 257 (5th Cir. 2013); *Miller v. BAC Home Loans Serv., L.P.*, 726 F.3d 717, 726 (5th Cir. 2013). In this case, there is no evidence that Defendants promised to sign a forbearance agreement that had already been prepared and would satisfy the statute of frauds. Plaintiffs have thus failed to raise a genuine dispute as to their promissory estoppel exception to the statute of frauds. *Milton*, 508 F. App'x at 329 (when no evidence exists to establish an oral agreement to reduce an otherwise unenforceable promise to writing, in satisfaction of the statute of frauds summary judgment with respect to an estoppel claim is proper).

Nor have Plaintiffs raised a genuine fact issue with respect to any partial performance exception to the statute of frauds. Under Texas law, the statute of frauds applies to partially performed oral contracts only if denial of enforcement would amount to a virtual fraud. *Williams*, 560 F. App'x at 239 (citing *Exxon Corp. v. Breezevale Ltd.*, 82 S.W.3d 429, 439 (Tex. App. -- Dallas 2002, pet. denied); *see also Castillo v. Ocwen Loan Servicing, L.L.C.*, 539 F. App'x 621, 624 (5th Cir. 2013) (citing *Bank of Tex., N.A. v. Gaubert*, 286 S.W.3d 546, 554 (Tex. App. -- Dallas 2009, pet. dism'd w.o.j.) ("The court should enforce an oral agreement when 'denying enforcement would itself amount to a fraud.'"). The acts of part performance must be "unequivocally referable to the agreement and corroborative of the fact that a contract actually was made." *Williams*, 560 F. App'x at 239. Here, Plaintiffs point to evidence that they applied for a loan modification and discussed a deed in lieu of foreclosure as evidence of actions that "unequivocally refer" to the alleged agreement not to foreclose and corroborate the existence of such an agreement. The Fifth Circuit has recently held, however, that such actions do not unequivocally corroborate the fact of any alleged oral agreement and are insufficient to establish a partial performance exception to the statue of frauds. *Id.* (partial performance exception to the statute of frauds did not apply because mortgagors' actions

of applying for a loan modification, dismissing bankruptcy filings, and failing to take action to prevent foreclosure sale did not unequivocally corroborate the fact of any alleged oral loan modification contract); *Enis v. Bank of Am., N.A.*, 2013 WL 1721961, at * (N.D. Tex. 2013) (evidence that mortgagor repeatedly applied for a loan modification does not reasonably support finding that bank agreed to modify loan or delay foreclosure for purposes of partial performance exception to statute of frauds).  Accordingly, summary judgment is appropriate on Plaintiffs' breach of contract claims based on an alleged agreement not to foreclose.

Plaintiffs also contend that Defendants' "constant reassurances" that they would qualify for a loan modification are inconsistent with Defendants' conduct of the foreclosure sale and thus constitute a waiver of the right to accelerate and foreclose.  Pl. MSJ Resp. at 8; Pl. First Am. Compl. at 8, ¶¶ 19-21.  To establish waiver, Plaintiffs must demonstrate (1) an existing right, benefit, or advantage held by Defendants; (2) Defendants' actual knowledge of its existence; and (3) Defendants' actual intent to relinquish the right, or intentional conduct inconsistent with the right. *Williams*, 560 F. App'x at 239 (quoting *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008).  The "key element" in establishing waiver is the intent to relinquish the right, which must be unequivocally manifested.  *Id.*  The summary judgment evidence in this case fails to raise a genuine dispute with respect to Defendants' intent to relinquish the right to foreclose.  The Deed of Trust contains a non-waiver provision, which provides that "[a]ny forbearance by Lender in exercising any right or remedy . . . shall not be a waiver of or preclude the exercise of any right or remedy."  Def. MSJ App. at 48, ¶ 12.  This provision undermines any inference that Defendants' consideration of Plaintiffs' loan modification request was intended as waiver.  *See, e.g., Williams*, 560 F. App'x at 239-40 (non-waiver provision in the deed of trust made clear that lender's

16

consideration of loan modification was not intended as a waiver).  Under similar circumstances, courts have repeatedly held that a mortgagee's postponement of a foreclosure sale and/or consideration of a mortgagor's loan modification request does not manifest an intent to waive the right to foreclose.  *See id.* (lender's actions delaying foreclosure and expressing a willingness to modify borrower's loan agreement do not manifest an intent by lender to waive its right to foreclose); *Watson v. Citimortgage, Inc.*, 530 F. App'x 322, 326 (5th Cir. 2013) (same); *Tavernini v. Bank of America, N.A.*, No. 4:12-CV-420, 2014 WL 1290063, at *7 (E.D. Tex. Mar. 31, 2014) (same); *Richardson v. Wells Fargo Bank, N.A.*, 873 F. Supp. 2d 800, 810 (N.D. Tex. 2012) (same).

### C. Negligent Misrepresentation

Plaintiffs also assert a claim for negligent misrepresentation based on Defendants' alleged statements that Plaintiffs qualified for a loan modification and that no foreclosure would occur.  *See* Plf. Resp. at 23- 24.  The tort of negligent misrepresentation requires:  (1) a representation made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest, (2) the defendant supplies "false information" for the guidance of others in their business, (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information, and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.  *Williams*, 560 F. App'x at 242.  A representation or promise to abstain from foreclosure refers to future conduct.  *See James v. Wells Fargo Bank*, N.A., 533 F. App'x 444, 448 (5th Cir. 2013).  "[U]nder Texas law, promises of future action are not actionable as a negligent-misrepresentation tort."  *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 477  F. App'x 200, 205 (5th Cir. 2012) (dismissing the plaintiff's negligent misrepresentation regarding defendant's alleged promises not to foreclose while considering a loan modification because they were un-actionable promises of

future conduct); *see also Milton*, 508 F. App'x at 329 (granting summary judgment for same reason). Further, there is no evidence that the statement in the June 7, 2011 letter from Litton that "no foreclosure sale will be conducted, and you will not lose your home during the HAMP evaluation period" was false.  The HAMP evaluation period conducted by Litton ended on June 8, 2011, and the Property was not sold until February 7, 2012.  Nor is there any evidence that Plaintiffs actually and justifiably relied on the February 7, 2012 letter from Ocwen.  To the contrary, Emma Bassknight admits that Plaintiffs did not receive the February 7, 2012 letter until after the foreclosure sale was completed. Plf. Resp. App. at 4.  Defendants therefore are also entitled to summary judgment on Plaintiffs' negligent misrepresentation claims.

### D. Unreasonable Collection Efforts and TDCPA

In their amended complaint, Plaintiffs allege that Defendants engaged in unreasonable collection efforts by (1) failing to give them an opportunity to cure their default; (2) misleading and delaying them to the point of foreclosure; (3) assessing late charges and penalties and imposing additional charges on their mortgage account.  Pl. Am. Compl. at ¶¶ 24-25.  Defendants move for summary judgment on this claim on grounds that the evidence establishes that Plaintiffs were not harassed by Defendants' collection efforts.  Plaintiffs fail to address Defendants' arguments in their summary judgment response and, thus, are deemed to have abandoned their claim for common law unreasonable collection efforts.  Additionally, the summary judgment evidence establishes that Plaintiffs have not raised a genuine issue for trial.  An unreasonable collection effort is an intentional tort when there was "a course of harassment that was willful, wanton, malicious, and intended to inflict mental anguish and bodily harm." *Williams*, 560 F. App'x at 240 (quoting *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 868 (Tex. App. -- Dallas 2008, no pet.).  Plaintiffs admitted at their

18

depositions that they did not feel harassed by Defendants' conduct.  Def. MSJ App. at 107, 114.  Nor do Plaintiffs identify any evidence that Defendants' conduct amounted to harassment intended to inflict mental anguish or bodily harm.  Defendants are therefore entitled to summary judgment on Plaintiffs' claim for unreasonable collection efforts.

Plaintiffs also allege violations of Texas Finance Code sections 392.301(a)(8), 392.303(a)(2), and 392.304(a)(8) and (a)(19).  Pl. Am. Compl. at ¶¶ 32-33.  Section 392.301(a)(8) prohibits a debt collector from using threats, coercion, or attempts to coerce by "threatening to take an action prohibited by law."  TEX. FIN. CODE § 392.301(a)(8).  Plaintiffs argue that Defendants' foreclosure was prohibited by law since Defendants' rights to accelerate and foreclose never matured because they failed to comply with the terms of the Deed of Trust.  Pl. Resp. at 21-22.  Plaintiffs further contend that Defendants' coerced them into not taking action to prevent the foreclosure by breaching a Deed in Lieu Agreement and repeatedly telling them to apply for a loan modification.  *Id.*  These arguments fail because the evidence is insufficient to raise a genuine dispute as to whether Defendants breached the Deed of Trust or otherwise lacked the right to foreclose.  *Williams*, 560 F. App'x at 240.

Section 392.303(a)(2) prohibits a debt collector from "collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer."  TEX. FIN. CODE § 392.303(a)(2).  Plaintiffs do not specifically address section 392.303(a)(2) in their summary judgment response.  Nor do they identify any evidence that Defendants ever collected or attempted to collect a fee or charge that they were not permitted to collect.

Section 392.304(a)(8) prohibits a debt collector from "misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding." Tex. Fin. Code § 392.304(a)(8). Section 392.304(a)(19) is a catch-all provision that prohibits a debt collector from "using any other false representation or deceptive means to collect a debt." *Id.* at § 392.304(a)(19). To violate the TDCA using a misrepresentation, "the debt collector must have made an *affirmative statement* that was false or misleading." *Kruse v. Bank of N.Y. Mellon*, 936 F. Supp. 2d 790, 792 (N.D. Tex. 2013) (emphasis in original). Plaintiffs assert that Defendants misled them into believing they were approved for a loan modification and that no foreclosure sale would occur. Pl. Resp. at 21. However, discussions regarding loan modifications and the postponement of foreclosure are not representations or misrepresentations of the amount or character of a debt. *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 (5th Cir. 2012). Nor does having such discussions constitute "deceptive means" to collect a debt. *Garza v. EMC Mortg.*, No. 3:11-CV-3504-M, 2014 WL 1016958, at *5 (N.D. Tex. Mar. 14, 2014); *Wildy v. Wells Fargo Bank, N.A.*, No. 3:12-CV-01831-BF, 2013 WL 246860, at *6 (N.D. Tex. Jan. 21, 2013).

Plaintiffs also allege that Defendants are not authorized to collect debts in the State of Texas because they have not obtained a bond from the Secretary of State as required by Texas Finance Code § 392.101. Pl. Am. Compl. at 12, ¶ 34. Defendants have adduced uncontroverted summary judgment evidence that OLS has obtained and filed a surety bond in satisfaction of the requirements of state law. Def. MSJ App. at 91-92, 94-5. Accordingly, Defendants are entitled to summary judgment on all of Plaintiffs' TDCA claims.

### E. Quiet Title and Trespass to Try Title

To prevail on their claims for quiet title or trespass to try title, Plaintiffs must recover on the strength of their own title. *Williams*, 560 F. App'x at 242 (citing *Fricks v. Hancock*, 45 S.W.3d 322, 327 (Tex. App. -- Corpus Christi 2001, no pet.) (quiet title) and *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994) (trespass to try title)). Here, Plaintiffs' claims depend on their assertion that Defendants had no right to foreclose. However, Plaintiffs have failed to raise a genuine fact issue as to any claim that would support such an assertion. Accordingly, Plaintiffs cannot prove the superiority of their title, and Defendants are entitled to summary judgment.

### F.  Accounting and Declaratory Judgment

Plaintiffs' requests for an accounting and for a declaratory judgment are not independent causes of action. Pl. Resp. at 29, 30; *see also Johnson v. Wells Fargo Bank, N.A.*, No. 3:13-CV-1793-M-BN, 2014 WL 2593616, at *5 (N.D. Tex. June 9, 2014) (an accounting is a remedy not an independent cause of action); *Gibbs v. Ocwen Loan Servicing, LLC*, No. 3:14-CV-1153-M, 2014 WL 4414809, at *9 (N.D. Tex. Sep. 5, 2014) (declaratory judgment is form of relief based on underlying claims). Because none of Plaintiffs' causes of action survive summary judgment, their requests for an accounting and a declaratory judgment also should be dismissed. *Thomas v. EMC Mortg. Corp.*, 499 F. App'x 337, 343 (5th Cir. 2012) (requests for accounting and declaratory relief necessarily fail when underlying substantive claims fail).

### RECOMMENDATION

The District Court should GRANT Defendants' Motion for Summary Judgment (Doc. 44) in its entirety and dismiss all of Plaintiffs' claims and causes of action with prejudice.

SO RECOMMENDED, October 29, 2014.


PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties.  Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory, or general objections.  A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a de novo determination by the District Court.  *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).  Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).